Filed 2/24/14  Nguyen v. Bank of America Home Loans CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| TERALYN NGUYEN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> BANK OF AMERICA HOME LOANS SERVICING, LP, et al. <br><br> Defendants and Respondents. | H038544 <br> (Santa Clara County <br> Super. Ct. No. CV204895) |

## I.  INTRODUCTION

Appellants Teralyn Nguyen and Cuong Dux Nguyen (the Nguyens) purchased a newly constructed home in San Jose that they allege was appraised by employees of William Lyon Homes, Inc., JPMorgan Chase Bank, N.A. (Chase Bank), and respondent Bank of America Home Loans Servicing, LP (Bank of America) as having a fair market value of $1.6 million between September 2004 and June 2005.[1]  The Nguyens further allege that based upon Bank of America's appraisal, they financed their purchase with a $1 million adjustable rate mortgage (ARM) and a $164,800 home equity line of credit.  In 2007, the Nguyens refinanced the home equity line of credit with a new loan of $350,000 from respondent PNC Bank, N.A. (PNC), allegedly based on an appraisal obtained by

---

[1]  The date that the Nguyens purchased their home and the purchase price were not stated in the second amended complaint.

PNC that stated that the fair market value of the Nguyens's home was $1.6 million. In March 2010 defendants issued and recorded a notice of default and a notice of sale. The sale of the Nguyens's home has been postponed.

In July 2011, the Nguyens filed a complaint alleging that the fair market value of their home was never more than $800,000 and that defendants intended to deceive and defraud them with a speculative appraisal of $1.6 million. In the second amended complaint (the currently operative pleading), the Nguyens asserted causes of action for fraud and deceit; breach of contract; failure to comply with Civil Code sections 2923.5 and 2924b, subdivision (b)(1); violation of Business and Professions Code section 17200; breach of the covenant of good faith and fair dealing; and quiet title. They also sought declaratory relief and an accounting.

Defendants demurred to the second amended complaint. Instead of filing opposition to the demurrers, the Nguyens attempted to file a third amended complaint without leave of court. The trial court rejected the third amended complaint for filing, sustained the demurrers to the second amended complaint without leave to amend, and entered a judgment of dismissal in favor of PNC and a subsequent judgment of dismissal in favor of Bank of America and its related entities. For reasons that we will explain, we will affirm the judgment of dismissal in favor of Bank of America and dismiss the appeal from the judgment of dismissal in favor of PNC.

## II. FACTUAL BACKGROUND

Our summary of the facts is drawn from the allegations of the second amended complaint, since we must assume the truth of the properly pleaded factual allegations in reviewing an order sustaining a demurrer. (See *Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 200.)

The Nguyens financed their purchase of a newly constructed home in San Jose with a $1 million ARM and $164,800 from a home equity line of credit. Their financing was based upon appraisals prepared by employees of William Lyons Homes, Inc., Bank

2

of America, and Chase Bank, during the period of September 2004 to June 2005, which stated that the home had a fair market value of $1.6 million. During an unspecified time period, the monthly payments on the ARM increased from $4,800.05 to $6,443.11.

In May 2007 the Nguyens refinanced the $164,800 home equity line of credit with a new conventional loan from PNC in the amount of $350,000, which was secured by a deed of trust on the Nguyens's residence. The refinancing of the home equity line of credit was based on an appraisal obtained by PNC, which stated that the fair market value of the Nguyens's residence was $1.6 million.

According to the Nguyens, the value of their residence "was never greater than $800,000." They believe that "[t]he duly authorized directors, officers, brokers, agents, employees and lending personnel of [all defendants named in the second amended complaint] had knowledge that the appraisal obtained by them was to be used by them to convince [the Nguyens] to finance the purchase of their home with a $1,000,000 ARM loan, and had knowledge that their representations that the value of the NGUYEN RESIDENCE of $1,600,000 was highly and outrageously speculative."

In March 2010, unspecified defendants recorded a notice of default followed by a notice of sale. The sale of the Nguyens's residence remains postponed.

### III. PROCEDURAL BACKGROUND

On July 12, 2011, the Nguyens filed a complaint naming numerous defendants, including defendant Bank of America (originally sued as Bank of America Home Loans Servicing LP and later sued as Bank of America Corp.). Certain defendants, including Bank of America, filed demurrers to the complaint, which the trial court sustained without leave to amend as unopposed. Although the record on appeal includes a December 22, 2011 judgment of dismissal of the original complaint, the record also includes a first amended complaint filed on October 5, 2011, and a second amended complaint filed on February 29, 2012. The second amended complaint is the currently operative pleading.

3

**A.** *The Second Amended Complaint*

Of the numerous defendants named in the second amended complaint, the only defendants who are parties to this appeal are Bank of America, ReconTrust Co., N.A. (ReconTrust), Mortgage Electronic Registration Systems, Inc. (MERS), and PNC. ReconTrust is sued as the acting trustee for a deed of trust recorded against the title to the Nguyens's residence. MERS is sued as "the nominee" of defendant Bank of America.[2]

In the first cause of action for "Actual Fraud, Negative Fraud/Deceit" against defendants Bank of America, ReconTrust, and MERS, the Nguyens allege that the "directors, officers, employees and authorized agents" of defendants failed to disclose that the $1.6 million appraisal was speculative, failed to disclose the "undesirability of the terms of the ARM loan," and made numerous materially false representations regarding the appraisal and the ARM. The Nguyens also allege that the false representations "were made with intent to deceive and defraud plaintiffs and to induce plaintiffs to finance their home with a $1,000,000 note which the lenders transferred for a profit into Tranches[3] marketed to international investors."

In the second cause of action for declaratory relief and an accounting against defendants Bank of America, ReconTrust, and MERS, the Nguyens seek a declaration

---

[2] Since for the reasons discussed *post* we will dismiss the appeal from the judgment of dismissal in favor of PNC, our summary of the second amended complaint omits the causes of action alleged solely against defendant PNC. We will also omit any discussion of the ninth cause of action for quiet title, since that cause of action is alleged only against William Lyon Homes, Inc. and Chase Bank. The Nguyens have dismissed JPMorgan Chase from this appeal and there is no indication in the record that William Lyon Homes, Inc. has appeared in this case.

[3] A tranche is defined as "a division or portion of a pool or whole; *specifically*: an issue of bonds derived from a pooling of like obligations (as securitized mortgage debt) that is differentiated from other issues especially by maturity or rate of return." (Merriam-Webster's Online Dict. (2014) <http://www.merriam-webster.com/dictionary/tranche> [as of Jan. 3, 2014].)

4

that Bank of America has no legal right to enforce the terms of the June 2, 2005 promissory note without producing the original note. They also seek "an accounting of all monies received from any source re the GSEs ['government sponsored entities'] and/or Tranches which may be held by them."

In the fifth cause of action for breach of contract, the Nguyens allege that Bank of America, "through its BAC Home Loan Servicing LLP entity," failed to assist them to obtain the relief that they were entitled to receive from government programs, including the California Keep Your Home program, the federal Home Affordable Refinancing Program (HARP), and the federal Home Affordable Modification Program (HAMP).

In the sixth cause of action for failure to comply with Civil Code section 2923.5, the Nguyens allege that Bank of America, ReconTrust, and MERS failed to satisfy the due diligence provisions of the statute, which provide that a notice of default cannot be filed until 30 days after satisfying the due diligence requirements set forth in subdivision (g).

In the seventh cause of action for failure to comply with Civil Code section 2924b, subdivision (b)(1), the Nguyens allege that Bank of America, ReconTrust, and MERS failed to comply with the mandatory requirements of the statute.

In the eighth cause of action for violation of Business and Professions Code section 17200, the Nguyens allege that Bank of America's false representations regarding the $1.6 million appraisal and the ARM constituted unfair, deceptive, and misleading business practices that violated public policy. The Nguyens further allege that they have suffered monetary damages as a result of Bank of America's unfair business practices, including "drastically increasing negative equity as a result of defendants' loan package financing" and the difference between the $1.6 million loan package and the current fair market value of their residence of $800,000.

The final cause of action against Bank of America, ReconTrust, and MERS is the tenth cause of action for violation of the duty of good faith and fair dealing. According to

the Nguyens, defendants breached this duty by financing the Nguyens's home purchase on the basis of a speculative $1.6 million appraisal and the uncertain and increased payments under the ARM, while knowing that the "imminent collapse of the real estate market would destroy plaintiffs' financial livelihood."

**B.** *Demurrers to the Second Amended Complaint*

In March 2012, defendants Bank of America, ReconTrust, and MERS demurred to the second amended complaint on the grounds that each cause of action against them was time-barred, fatally uncertain, or failed to state sufficient facts.

As to the first cause of action for fraud, defendants argued that the claim was time-barred under the three-year statute of limitations set forth in Code of Civil Procedure section 338, subdivision (d) since the original complaint was filed in 2011, six years after the Nguyens's loan closed in 2005. Defendants also argued that the cause of action failed to allege fraud with the requisite particularity since the individuals who made the alleged misrepresentations were not identified. Alternatively, defendants asserted that the Nguyens had not alleged actual misrepresentation in the absence of an allegation that defendants had knowingly misrepresented fair market value.

The fifth cause of action for breach of contract also failed as a matter of law, according to defendants, since there were no allegations of the existence of a contract. Further, there were no allegations that defendants had violated either a government program or a statutory provision.

Defendants argued that the sixth cause of action for failure to comply with Civil Code section 2923.5 and the seventh cause of action for failure to comply with Civil Code section 2924b, subdivision (b)(1) similarly failed to state sufficient facts. In each cause of action, defendants pointed out, the Nguyens had not stated any facts showing that defendants had not complied with any provision of either statute.

Regarding the eighth cause of action for unfair business practices under Business and Professions Code section 17200, defendants contended that the Nguyens lacked

6

standing to assert a private action under this section because they had not alleged an injury within the meaning of the statute. Alternatively, defendants contended that the cause of action was time-barred under the four-year statute of limitations set forth in Business & Professions Code section 17208 and, even if timely asserted, the cause of action failed because the underlying fraud claim lacked merit as a matter of law.

Defendants argued that the tenth cause of action for breach of the covenant of good faith and fair dealing was time-barred under the four-year statute of limitations provided by Code of Civil Procedure section 337 for a claim based on a written contract, since the alleged misrepresentations regarding the property appraisal were made at the loan's inception in 2005 and the original complaint was filed six years later in 2011.

Finally, defendants argued that the second cause of action for declaratory relief and an accounting failed as a matter of law since neither declaratory relief nor an accounting may be obtained where the plaintiffs' underlying allegations fail to state a valid cause of action. Defendants further argued that since the Nguyens had failed in their third attempt to plead a viable cause of action, their demurrers should be sustained without leave to amend.

### C. *Attempt to File a Third Amended Complaint*

The Nguyens did not file opposition to defendants' demurrers to the second amended complaint or appear at the hearing on the demurrers. Instead, the Nguyens attempted to file a third amended complaint without leave of court. In a civil filing rejection letter dated April 26, 2012, the superior court clerk advised the Nguyens that the third amended complaint could not be filed without a court order.

### D. *The Trial Court's Order*

In the order filed on May 30, 2012, the trial court stated that the court had issued a tentative order on April 30, 2012 and neither party requested a hearing. The court sustained the demurrers to the second amended complaint in their entirety "<u>without leave to amend </u>for reasons stated in [the] tentative ruling."

7

The tentative ruling was not included in the record on appeal. On our own motion, we have taken judicial notice of the tentative ruling,[4] which states in part: "Plaintiffs did not file any opposition to the demurrers or the motion to strike. The demurrers to the Second Amended Complaint are sustained. [¶] Plaintiffs have the burden to show a reasonable possibility that amendment could cure the defects in the pleading. [Citation.] Plaintiffs having failed to respond at all to the demurrers, the Court is unable to discern how the defects in the Second Amended Complaint could be cured by amendment and it therefore appears that granting leave to amend would be futile. Accordingly, leave to amend is denied."

A judgment of dismissal in favor of Bank of America (including its subsidiary and acquired entities BAC Home Loans Servicing, L.P. and Countrywide Bank, N.A.) and MERS was entered on May 30, 2012.[5]

The Nguyens thereafter filed a motion for reconsideration and to vacate the May 30, 2012 order. In their addendum to the motion (the record on appeal lacks the original motion) they argued that the trial court had erred in rejecting their third amended complaint for filing and there were new facts (consisting of consent judgments between the attorney generals of several states and five banks, including Bank of America) to support the cause of action for violation of Business and Professions Code section 17200. Defendants Bank of America, MERS, and ReconTrust filed opposition to the motion on the ground that the motion was untimely filed after the entry of judgment; information regarding the consent judgments was widely reported and available to plaintiffs before

---

[4] Evidence Code section 452, subdivision (d)(1) provides that judicial notice may be taken of the records of "any court of this state."

[5] Although the demurrers to the second amended complaint brought by defendants Bank of America and MERS included defendant ReconTrust, ReconTrust was not named in the judgment. However, the parties do not dispute that ReconTrust is included in the judgment as a Bank of America entity.

8

entry of judgment; the Nguyens were not parties to the consent judgments, which do not apply to any individual mortgage case; and there was no basis for further amendment of the second amended complaint.

The record on appeal does not include any trial court order pertaining to the Nguyens's motion for reconsideration and to vacate the May 30, 2012 order.[6] On July 12, 2012, the Nguyens filed a timely notice of appeal from the judgment of dismissal after the May 30, 2012 order sustaining the demurrers of defendants Bank of America, MERS, and ReconTrust.

## IV.  DISCUSSION

### A.  *Dismissal of PNC from Appeal*

In reviewing the record on appeal, we observed that the notice of appeal filed on July 12, 2012, specified that the appeal was from the judgment of dismissal after the May 30, 2012 order, which sustained the demurrers of Bank of America, MERS, and ReconTrust to the second amended complaint without leave to amend.  The July 12, 2012 notice of appeal did not mention the judgment entered on May 17, 2012, after the order sustaining defendant PNC's demurrer to the second amended complaint without leave to amend, which dismissed PNC from the action with prejudice.

We further observed that the record on appeal did not contain a separate notice of appeal specifying that the appeal was from the May 17, 2012 judgment of dismissal in favor of PNC.  Since the timely filing of a notice of appeal is a jurisdictional prerequisite (*Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 113 (*Silverbrand*)), we requested supplemental briefing from the parties regarding whether PNC must be dismissed from the appeal.

---

[6] Counsel for PNC subsequently advised this court that the Nguyens's motion for reconsideration and to vacate the judgment was taken off calendar on July 2, 2012.

9

In its supplemental briefing letter, PNC provided additional procedural history with respect to the appeal. PNC stated that the Nguyens filed a notice of appeal on July 16, 2013, from the "May 17, 2013" judgment of dismissal after an order sustaining a demurrer. According to counsel for PNC, on inquiry the Nguyens's counsel informed them that the July 16, 2013 notice of appeal "had been 'filed by mistake.' " The Nguyens thereafter filed a notice of abandonment of the appeal and the superior court served and filed a notice of abandonment on August 16, 2013.

PNC therefore argues that even if the Nguyens's June 2012 motion to vacate the May 17, 2012 judgment is deemed to have extended the time to file a notice of appeal from the May 17, 2012 judgment of dismissal in favor of PNC to September 4, 2012 (Cal. Rules of Court, rule 8.108(c)), the Nguyens's failure to file a timely notice of appeal from the May 17, 2012 judgment requires this court to dismiss PNC from the appeal due to lack of jurisdiction. Under the rules governing our appellate jurisdiction, we agree.

The California Supreme Court has instructed that "the filing of a timely notice of appeal is a jurisdictional prerequisite. 'Unless the notice [of appeal] is actually or constructively filed within the appropriate filing period, an appellate court is without jurisdiction to determine the merits of the appeal and must dismiss the appeal.' [Citations.] The purpose of this requirement is to promote the finality of judgments by forcing the losing party to take an appeal expeditiously or not at all. [Citation.]" (*Silverbrand*, *supra*, 465 Cal.4th at p. 113.)

A notice of appeal "is sufficient if it identifies the particular judgment or order being appealed." (Cal. Rules of Court, rule 8.100(a)(2).) Additionally, the California Supreme Court has instructed that a notice of appeal " ' "shall be liberally construed in favor of its sufficiency." ' " (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20, 23 Cal.Rptr.3d 490, 104 P.3d 844 ) Therefore, where it is "reasonably clear the appellant intended to appeal from the judgment and the

10

respondent would not be misled or prejudiced," the notice of appeal may be interpreted to apply to an existing judgment. (*Id.* at p. 22.)

However, "[a] notice of appeal from a judgment alone does not encompass other judgments and separately appealable orders: ' "The law of this state does not allow, on an appeal from a judgment, a review of any decision or order from which an appeal might previously have been taken." ' [Citation.]" (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 239 (*Sole Energy*).) Thus, " '[d]espite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed.' [Citation.]" (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 47 (*Norman I. Krug*); see also *Sears, Roebuck and Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1352.) Accordingly, where a notice of appeal specified that the plaintiffs were appealing from a judgment entered on January 30, 2003, and did not mention the separately appealable order granting defendants a new trial on January 17, 2003, the appellate court lacked jurisdiction to review the order granting a new trial. (*Sole Energy*, *supra*, 128 Cal.App.4th at pp. 239-240.)

We reach a similar result in the present case. The notice of appeal filed on July 12, 2012, specified that the appeal was from the May 30, 2012 judgment of dismissal after an order sustaining a demurrer and does not mention the May 17, 2012 judgment of dismissal in favor of PNC. The May 30, 2012 judgment of dismissal expressly states that the judgment is on the order sustaining the demurrers of Bank of America, MERS, and ReconTrust to the second amended complaint without leave to amend, and does not mention the May 17, 2012 order sustaining PNC's demurrers to the second amended complaint without leave to amend.

Thus, the record reflects that no notice of appeal was ever filed with respect to the separately appealable May 17, 2012 judgment on the order sustaining PNC's demurrer to

11

the second amended complaint without leave to amend. In the absence of a timely notice of appeal, we lack jurisdiction to review the May 17, 2012 judgment of dismissal. (*Silverbrand*, *supra*, 465 Cal.4th at p. 113; *Sole Energy*, *supra*, 128 Cal.App.4th at p. 239.)

The Nguyens's argument in their supplemental briefing letter does not convince us otherwise, since we understand them to argue that the July 12, 2012 notice of appeal was timely filed after their motion to vacate the judgment and encompassed the May 17, 2012 judgment of dismissal in favor of PNC. We find no merit in this argument because, as we have discussed, the July 12, 2012 notice of appeal may not be construed to include the omitted May 17, 2012 judgment that was separately appealable. (*Norman I. Krug*, *supra*, 220 Cal.App.3d at p. 47.) We will therefore dismiss PNC from the appeal.

**B.** *Filing of Third Amended Complaint*

The Nguyens's primary argument on appeal is that the trial court committed reversible error under Code of Civil Procedure section 472 (hereafter, section 472) because the superior court clerk rejected their third amended complaint for filing due to the lack of a court order giving the Nguyens leave to file a third amended complaint.

Section 472 states: "Any pleading may be amended once by the party of course, and without costs, at any time before the answer or demurrer is filed, or after demurrer and before the trial of the issue of law thereon, by filing the same as amended and serving a copy on the adverse party, and the time in which the adverse party must respond thereto shall be computed from the date of notice of the amendment."

We understand the Nguyens to argue that when a demurrer to an amended complaint is filed, section 472 provides the plaintiff with an absolute right to respond to the demurrer by filing a successive amended complaint that supersedes the previously amended complaint, and that leave of court is not required as long as the successive amended complaint is filed before the hearing on the demurrer. The Nguyens also believe that they had the right to file a third amended complaint without leave of court

12

because, under section 472, the second amended complaint was "for all [intents and] purposes is the original complaint in this action." Since the Nguyens attempted to file their third amended complaint prior to the May 1, 2012 hearing on defendants' demurrers to the second amended complaint, they contend that the trial court committed reversible error in failing to accept the third amended complaint, and their action was therefore wrongfully dismissed.

In response, Bank of America, MERS, and ReconTrust (hereafter, defendants) argue that the Nguyens's interpretation of section 472 would improperly allow "a plaintiff to endlessly delay a demurrer hearing by simply filing an amended complaint every time the demurrer is about to be heard." Defendants maintain that section 472, properly interpreted, does not authorize successive amendments without leave of court, relying on the decisions in *Tingley v. Times Mirror* (1907) 151 Cal. 1 (*Tingley*) and *Gautier v. General Telephone Co.* (1965) 234 Cal.App.2d 302 (*Gautier*).)

However, neither party has pointed us to any decisions that are directly on point with regard to the issue of whether section 472 provides an absolute right to file a successive amended complaint without leave of court until the time of the hearing on the demurrer to the previously amended complaint. To resolve the issue, we must construe section 472 under the rules governing statutory interpretation.

Statutory interpretation involves purely legal questions to which we apply the independent standard of review, guided by well-settled rules. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.) "[O]ur fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.] In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of

13

law of which it is part so that the whole may be harmonized and retain effectiveness.'
[Citation.]" ' [Citation.] If the statutory terms are ambiguous, we may examine extrinsic
sources, including the ostensible objects to be achieved and the legislative history.
[Citation.] In such circumstances, we choose the construction that comports most closely
with the Legislature's apparent intent, endeavoring to promote rather than defeat the
statute's general purpose, and avoiding a construction that would lead to absurd
consequences. [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.)

We determine that the plain language of section 472 provides the plaintiff with the
right to amend the original complaint without leave of court until the time of the hearing
on the demurrer. Section 472 states in part: "Any *pleading* may be *amended once by the
party of course*, and without costs, at any time before the answer or demurrer is filed, or
after demurrer and before the trial of the issue of law thereon, by *filing the same as
amended . . . .*" (Emphasis added.) Significantly, section 472 plainly distinguishes a
"pleading" from an "amended" pleading: After the original pleading is amended, it is
thereafter designated an amended pleading. Section 472 expressly provides that only a
"pleading" may be amended once as a matter of right. Section 472 does not provide that
a party may amend an *amended* pleading as a matter of right. Moreover, the Nguyens's
interpretation would require us to improperly ignore the word "amended" in section 472,
in contravention of the statutory construction principle "that courts must strive to give
meaning to every word in a statute and to avoid constructions that render words, phrases,
or clauses superfluous. [Citations.]" (*Klein v. United States America* (2010) 50 Cal.4th
68, 80.)

The plain language of section 472 therefore provides the right to a single
amendment of the original complaint without leave of court. An amended complaint may
not be further amended absent leave of court, as provided in Code of Civil Procedure
section 473, subdivision (a)(1) [court may grant leave to amend in the furtherance of
justice] and Code of Civil Procedure section 472a, subdivision (c) [court may grant leave

14

to amend where demurrer sustained]. In other words, the statutory right to amend the complaint without leave of court is no longer available once the trial court has sustained the demurrer to the original complaint. The contrary interpretation of section 472 urged by the Nguyens would lead to the absurd consequence of allowing a plaintiff to continuously delay the hearing on a demurrer to an amended complaint by filing a successive amended complaint, to which the defendant would demur, then by filing yet another successive amended complaint to which the defendant would again demur, ad infinitum.

Our plain language interpretation of section 472 is also supported by the decision in *Leader v. Health Industries of America, Inc* (2001) 89 Cal.App.4th 603. In that case, the plaintiffs filed a third amended complaint to which defendants demurred. (*Id*. at p. 608.) The trial court sustained the demurrers with leave to amend. After the amendment deadline had passed, the plaintiffs handed a copy of a fourth amended complaint to counsel and the trial court during a status conference. The trial court instructed the plaintiffs to file a motion for leave to file the fourth amended complaint. (*Ibid*.) The appellate court ruled that the trial court had properly required a noticed motion for leave, stating that the "plaintiffs no longer had an unfettered right to file an amended complaint. '[A] litigant does not have a positive right to amend his [or her] pleading after a demurrer thereto has been sustained. "His [or her] leave to amend afterward is always of grace, not of right. [Citation.]" [Citation.]' ([*Gautier*, *supra*, 234 Cal.App.2d at p. 310].)" (*Id*. at p. 612.)

Also instructive is the California Supreme Court's decision in *Tingley*, *supra*, 151 Cal.1, construing a former but similar version of section 472.[7] The issue in *Tingley*

---

[7] Former section 472, as set forth in *Tingley*, *supra*, 151 Cal.1, stated: " 'Any pleading may be amended once by the party of course, and without costs, at any time before answer or demurrer is filed, or after demurrer, and before the trial of the issue of law thereon, by filing the same as amended . . . .' " (*Id*. at p. 9.)

was whether the defendant had the right to file an amended answer without leave of court on the day before trial. (*Id*. at p. 9.) The court determined that the defendant had no such right, because "[t]his right to amend, while applying to the pleadings of both parties, has its limitation as to the time within which either may exercise under [section 472], and such time is not extended in behalf of the defendant beyond final joinder on the issues of fact in the case." (*Id*. at p. 10.) Thus, "each [party] has a right to amend while the issue of law raised by demurrer to his [or her] pleading is undetermined." (*Id*. at p. 11.)

The Nguyens rely on the decisions in *Gross v. Department of Transportation* (1986) 180 Cal.App.3d 1102 (*Gross*) and *Barton v. Khan* (2007) 157 Cal.App.4th 1216 (*Barton*), but those decisions do not support their interpretation of section 472 since both decisions addressed only a first amended complaint.

In *Gross,* the appellate court ruled that "[a]t the time appellants filed their first amended complaint, no answer or demurrer had been filed by any party. Thus, we conclude that appellants were entitled, as a matter of course, to amend their complaint once by adding respondent as a defendant." (*Gross*, *supra*, 180 Cal.App.3d at p. 1105.) In *Barton*, the issue was whether "one defendant's filing of an answer divests plaintiff of the right to amend the complaint with respect to the causes of action brought against other demurring defendants." (*Barton*, 157 Cal.App.4th at pp. 1220-1221.) In determining that the plaintiff retained the right to amend the complaint with respect to the non-answering defendants, the *Barton* court expressly considered only the right to file a *first* amended complaint. (*Id*. at p. 1218.)

Here, the Nguyens were granted leave to file a second amended complaint, to which defendants demurred. The trial court had not granted the Nguyens leave to file a third amended complaint and, therefore, in accordance with the plain language of section 472, we conclude that the superior court clerk properly refused to accept the third amended complaint for filing.

16

## C. *Statement of Grounds in Demurrer Order*

The Nguyens also argue that the trial court committed reversible error by failing to include a statement of the grounds for sustaining the demurrers in its May 30, 2012 order, pursuant to Code of Civil Procedure section 472d. That section provides that "[w]henever a demurrer in any action or proceeding is sustained, the court shall include in its decision or order a statement of the specific ground or grounds upon which the decision or order is based which may be by reference to appropriate pages and paragraphs of the demurrer. [¶] The party against whom a demurrer has been sustained may waive these requirements." (Code Civ. Proc., § 472d.)

The trial court's May 30, 2012 order expressly provides that defendants' demurrer to the second amended complaint was sustained without leave to amend "for the reasons stated in [the] tentative ruling." As we have noted, the tentative ruling stated in part: "Plaintiffs did not file any opposition to the demurrers or the motion to strike. The demurrers to the Second Amended Complaint are sustained. [¶] Plaintiffs have the burden to show a reasonable possibility that amendment could cure the defects in the pleading. [Citation.] Plaintiffs having failed to respond at all to the demurrers, the Court is unable to discern how the defects in the Second Amended Complaint could be cured by amendment and it therefore appears that granting leave to amend would be futile. Accordingly, leave to amend is denied." The May 30, 2012 order therefore included a statement of the specific grounds for sustaining the demurrer to the second amended complaint since the order incorporated by reference the tentative ruling.

In any event, "[t]he failure to state the court's reasons ' "must be considered harmless error . . . absent a demonstration of prejudice to plaintiff. [Citation.] The requirement of stated grounds is very useful as a guide when plaintiff wishes and is able to amend the complaint, but on appeal its importance is minimal since the ruling will be upheld on any sufficient ground, whether relied on by the court below or not.

[Citation.]" ' [Citations.]" (*Lambert v. Carneghi* (2008) 158 Cal.App.4th 1120, 1128, fn. 4 (*Lambert*).)

The Nguyens have not attempted to show that they were prejudiced due to the alleged deficiencies in the trial court's May 30, 2012 order. Moreover, since there is no indication in the record that the Nguyens notified the trial court of a failure to state reasons in the order, we find that the Nguyens have waived the requirements of section 472d. (See *Lambert*, *supra*, 158 Cal.App.4th at p. 1128, fn. 4.) We therefore reject the Nguyens's contention that the May 30, 2012 order must be reversed for failure to comply with section 472d.

### D. *Standard of Review*

We next consider the issue of whether we may review the merits of the May 30, 2012 order sustaining defendants' demurrers to the second amended complaint since, with the exception of their postjudgment motion for reconsideration and to vacate the judgment, the Nguyens did not oppose the demurrers during trial court proceedings. The general rule is that an appellant who has failed to oppose a motion in the trial court has forfeited any appellate challenge to the resulting order. (*Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1602.) However, "[w]hen any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made." (Code Civ. Proc. § 472c, subd. (a); *Mercury Ins. Co. v. Pearson* (2008) 169 Cal.App.4th 1064, 1072.) Thus, the Nguyens's failure to oppose defendants' demurrers to the second amended complaint is not dispositive of their appeal.

The standard of review is well established. On appeal from a judgment of dismissal after a demurrer is sustained without leave to amend, the standard of review is de novo. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) In performing our independent review of the complaint, we assume the truth of all facts properly pleaded by the plaintiff. (*Evans v. City of Berkeley*

18

(2006) 38 Cal.4th 1, 6 (*Evans*).) "We also accept as true all facts that may be implied or reasonably inferred from those expressly alleged. [Citation.]" (*Rotolo v. San Jose Sports & Entertainment, LLC* (2007) 151 Cal.App.4th 307, 320-321.) Further, "we give the complaint a reasonable interpretation, and read it in context." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) But we do not assume the truth of " ' "contentions, deductions or conclusions of fact or law." ' " (*Evans*, *supra*, 38 Cal.4th at p. 6.)

Additionally, "[i]f the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Schifando*, *supra*, 31 Cal.4th at p. 1081.)

We will apply this standard of review to each cause of action in the second amended complaint to which the trial court sustained defendants' demurrers without leave to amend.

### E. *Fraud*

In the first cause of action for "Actual Fraud, Negative Fraud/Deceit" against defendants Bank of America, ReconTrust, and MERS, the Nguyens allege that the "directors, officers, employees and authorized agents" of defendants failed to disclose that the $1.6 million appraisal was speculative, failed to disclose the "undesirability of the terms of the ARM loan," and made numerous materially false representations regarding the appraisal and the ARM. The Nguyens also allege that the false representations "were made with intent to deceive and defraud plaintiffs and to induce plaintiffs to finance their home with a $1,000,000 note which the lenders transferred for a profit into Tranches marketed to international investors."

19

### 1. The Parties' Contentions

The Nguyens argue for several reasons that the trial court erred in sustaining defendants' demurrer to the fraud cause of action without leave to amend. First, the Nguyens contend the original complaint was timely filed under the three-year statute of limitations provided in Code of Civil Procedure section 388, subdivision (d), since the complaint was filed in July 2011, less than three years after defendants filed a notice of default and election to sell in March 2010.

Second, the Nguyens contend that the second amended complaint alleges facts with sufficient particularity for a fraud claim without identifying the agents of defendants who were involved in transactions with them. The Nguyens assert that defendants have the ability to identify their agents, while the Nguyens were unsophisticated borrowers who could not be expected to remember the agents' names.

Third, the Nguyens contend that they have sufficiently alleged the factual basis for their claims of fraud since the second amended complaint alleges that defendants' agents intentionally misrepresented the value of the Nguyens's residence with a speculative appraisal and also intentionally misrepresented the terms of the ARM in order to "successfully package this loan as a mortgage backed security." The Nguyens also contend that these facts are sufficient for their claim of deceit because defendants concealed from them that the $1.6 million appraisal was speculative in order to induce them to take out a much larger loan than they would have taken had they known the actual fair market value of their home.

Defendants disagree. They maintain that the second amended complaint does not allege facts sufficient for a fraud claim because there are no allegations regarding any specific statement or representation that was made to the Nguyens about the loan or the value of the property, nor are there any allegations regarding the name of the person who made a statement, when the statement was made, how the statement was untrue, and how

20

they relied upon the statement to their detriment.  Defendants also argue that the Nguyens fail to allege the out-of-pocket loss required for the damages element of a fraud claim.

Additionally, defendants argue that the fraud cause of action is time-barred on its face under Code of Civil Procedure section 388, subdivision (d) because the Nguyens have failed to specifically plead either the time and manner in which they discovered the fraud or facts showing why they could not have discovered the fraud earlier with reasonable diligence.

### 2. Analysis

The California Supreme Court has established the requirements for pleading a fraud claim.  "In California, fraud must be pled specifically; general and conclusory allegations do not suffice.  [Citations.]  'Thus " 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' "  [Citation.]  [¶]  This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." '  [Citation.]  A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater.  In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'  [Citation.]"  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 (*Lazar*).)  However, this court has acknowledged "that the requirement of specificity is relaxed when the allegations indicate that 'the defendant must necessarily possess full information concerning the facts of the controversy' [citation] or 'when the facts lie more in the knowledge of the opposite party[.]' [Citation.]" (*Tarmann v. State Farm Mutual Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158.)

In the present case, the Nguyens allege in their fraud cause of action that "[t]he duly authorized directors, officers, brokers, agents, employees and lending personnel of the above named defendants had knowledge that the appraisal obtained by them was to be

21

used by them to convince plaintiffs to finance the purchase of their home with a $1,000,000 ARM loan, and had knowledge that their representations that the value of the NGUYEN RESIDENCE of $1,600,000 was highly and outrageously speculative." The Nguyens further allege that "[t]he directors, officers, employees and authorized agents of the above-described defendants . . . failed to disclose the speculation of the appraisal and/or failed to disclose the undesirability of the terms of the ARM loan . . . ." Additionally, the Nguyens allege that "[t]he duly authorized directors, officers, brokers, agents, employees and lending personnel of defendant [Bank of America]" made false representations regarding the current market value of the Nguyen's home and the ARM loan.

Our review of the Nguyens's fraud allegations shows that the second amended complaint completely lacks the requisite allegations of " ' "how, when, where, to whom, and by what means the representations were tendered." ' [Citation.]" (*Lazar*, *supra*, 12 Cal.4th at p. 645.) Absent such allegations, defendants are unable to dispute the fraud claim. Moreover, since the Nguyens were allegedly the recipients of the alleged misrepresentations regarding the $1.6 million appraisal, the market value of their home, and the terms of the ARM, defendants have no more reason than the Nguyens to know " ' "how, when, where, to whom, and by what means the representations were tendered." ' [Citation.]" (*Lazar*, *supra*, 12 Cal.4th at p. 645; see also *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 763 [fraud allegations insufficient where no allegations as to who made statements or when they were made]; compare with *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 793 [fraud allegations sufficient where it was alleged that the defendant made misrepresentations in specific dated documents and during telephone conferences on certain dates, and the documents were attached to the complaint].)

We therefore determine that the allegations in the second amended complaint are insufficient to state a cause of action for fraud. The allegations in the second amended

complaint are also insufficient for a cause of action for fraudulent concealment, since the requirement that "[f]raud must be pleaded with specificity" also applies to a cause of action for fraud and deceit based on concealment. (*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248 (*Boschma*).) The Nguyens have not argued that the deficiencies in the cause of action for fraud may be cured by amendment. (See *Schifando*, *supra*, 31 Cal.4th at p. 1081.) Therefore, even assuming the fraud claims were timely filed under Code of Civil Procedure section 388, subdivision (d), we determine that the trial court properly sustained the demurrer to the first cause of action for fraud without leave to amend.

### F. *Declaratory Relief and Accounting*

In the second cause of action for declaratory relief and an accounting against defendants Bank of America, ReconTrust, and MERS, the Nguyens seek a declaration that Bank of America has no legal right to enforce the terms of the June 2, 2005 promissory note without producing the original note. They also seek "an accounting of all monies received from any source re the GSEs ['government sponsored entities'] and/or Tranches which may be held by them."

On appeal, the Nguyens wisely do not argue that their declaratory relief action may be based upon the allegation that Bank of America has no legal right to enforce the terms of the June 2, 2005 promissory note without producing the original note. This court has ruled that there is "nothing in the applicable statutes that precludes foreclosure when the foreclosing party does not possess the original promissory note." (*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440.)

The Nguyens's argument now is that their cause of action for declaratory relief and an accounting sufficiently alleges an "actual controversy relating to the legal rights and duties of the respective parties," as set forth in Code of Civil Procedure section 1060. We understand the Nguyens to claim that they are entitled to a declaration regarding the funds allegedly received by defendants from government programs or other sources "as

23

compensation for a default on this loan by [the Nguyens]" and also a declaration as to whether defendants have been thereby compensated for the default on the Nguyens's loan. The Nguyens further claim that they are entitled to an accounting of the funds that defendants have received from government programs or other sources.

In addition to pointing out that the Nguyens cannot base a declaratory relief action on the absence of the original promissory note, defendants contend that the allegations in the second amended complaint are insufficient to show an actual controversy since an accounting is proper only "where the defendant owes the plaintiff money—not the other way around."

We note that the Nguyens have failed to provide any legal authority for their proposition, as we understand it, that where a lender has received funds from government programs or other sources due to the borrower's default, those funds have extinguished a borrower's obligation to repay the mortgage loan owed to the lender. This omission is fatal to their declaratory relief cause of action. " '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' [Citations.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 793 (*Stanley*); see also *Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1399 (*Bank of America*).)

Moreover, the allegations regarding the Nguyens's entitlement to an accounting are insufficient. "A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting. [Citations.]" (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.) In addition to failing to provide any legal authority for the proposition on which their accounting claim is based, the Nguyens have failed to allege that a balance is due to them from defendants and have not argued that the complaint may be amended to allege such a balance.

24

We therefore find that the trial court did not err in sustaining the demurrer to the second cause of action for declaratory relief and an accounting without leave to amend.

### G. *Breach of Contract*

In the fifth cause of action for breach of contract, the Nguyens allege that Bank of America, "through its BAC Home Loan Servicing LLP entity," failed to assist them to obtain the relief that they were qualified to receive from government programs, including the California Keep Your Home program and the federal HARP and HAMP programs. The Nguyens further allege that Bank of America "has admitted to the federal agencies its failure in this regard, and has been penalized by the federal agencies for these failures." They assert that Bank of America's failure entitles them to an order staying the pending foreclosure action until "relief is properly pursued by defendants per federal and California programs relevant to and pertinent to plaintiffs' situation."

The Nguyens argue on appeal that these allegations are sufficient for a breach of contract cause of action because their claim is based upon an underlying promissory note. Alternatively, they explain that defendants' failure to assist them to obtain the relief provided by government programs that were created to prevent unnecessary foreclosures constitutes a breach of the duty of good faith and fair dealing, which also constitutes a breach of contract.

Defendants argue that the allegations are insufficient for a breach of contract action because the second amended complaint does not set forth the terms of any contract and the Nguyens have not, and cannot, allege facts showing that they were parties to or intended third-party beneficiaries of contracts with state and federal government programs to modify loans. Defendants also argue that there is no private right of action for violations of HAMP.

We agree that the allegations of the fifth cause of action are insufficient to state a cause of action for breach of contract. The Nguyens fail to provide any legal authority for the argument that a mortgage lender's failure to assist a borrower to obtain relief from

25

government programs created to prevent unnecessary foreclosures constitutes a breach of the implied covenant of good faith and fair dealing in the promissory note. We may therefore pass on the point as waived, without further consideration. (*Stanley*, *supra*, 10 Cal.4th 764, 793.)

However, even if the argument was not waived, we would find no merit in it. "The TARP [Troubled Asset Relief Program] was established as part of the Emergency Economic Stabilization Act of 2008 (EESA), found at title 12 of the United States Code sections 5201 to 5261, and was to be implemented by the United States Department of the Treasury. (See 12 U.S.C. § 5211.) The EESA, including various programs created under it such as the Making Home Affordable Program and the Home Affordable Modification Program (HAMP), has been consistently construed to create no private rights or private causes of action on the part of borrowers. [Citations.]" (*Bank of America*, *supra*, 217 Cal.App.4th at p. 1399; see also *Miller v. Chase Home Finance, LLC* (11th Cir. 2012) 677 F.3d 1113, 1116 [no implied private right of action under EESA or HAMP]; *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012) 673 F.3d 547, 559, fn.4 [federal courts have rejected borrowers' claims that HAMP provides a private cause of action against lenders].)

Since the Nguyens have failed to allege sufficient facts to state a cause of action for breach of contract and do not assert that any deficiencies may be cured by amendment, we determine that the trial court properly sustained the demurrer without leave to amend.

### H. *Violation of Civil Code Section 2923.5*

In the sixth cause of action, the Nguyens assert a violation of Civil Code section 2923.5,[8] (hereafter, section 2923.5) based on the following allegations: "Civil Code

---

[8] In March 2010, when unspecified defendants allegedly recorded a notice of default followed by a notice of sale of the Nguyens's residence, former Civil Code section 2923.5, subdivision (a)(1) stated: "A mortgagee, trustee, beneficiary, or

Section 2923.5 provides that a notice of default cannot be filed until 30 days after

satisfying the due diligence requirements as described in subsection (g) of the statute.

---

authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g)."  Subdivision (g) of former section 2923.5 provided:  "A notice of default may be filed pursuant to Section 2924 when a mortgagee, beneficiary, or authorized agent has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent.  For purposes of this section, 'due diligence' shall require and mean all of the following:  (1) A mortgagee, beneficiary, or authorized agent shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.  [¶]  (2)(A) After the letter has been sent, the mortgagee, beneficiary, or authorized agent shall attempt to contact the borrower by telephone at least three times at different hours and on different days.  Telephone calls shall be made to the primary telephone number on file. [¶]  (B) A mortgagee, beneficiary, or authorized agent may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgagee, beneficiary, or authorized agent.  [¶]  (C) A mortgagee, beneficiary, or authorized agent satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.  [¶]  (3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgagee, beneficiary, or authorized agent shall then send a certified letter, with return receipt requested.  [¶]  (4) The mortgagee, beneficiary, or authorized agent shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.  [¶]  (5) The mortgagee, beneficiary, or authorized agent has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:  [¶]  (A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.  [¶]  (B) A list of financial documents borrowers should collect and be prepared to present to the mortgagee, beneficiary, or authorized agent when discussing options for avoiding foreclosure.  [¶]  (C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgagee, beneficiary, or authorized agent. [¶]  (D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency."

27

[¶] . . . Civil Code section 2923.5 was recently enacted and took effect beginning January 2011. By subsection (b)(2), it in effect prevent[s] plaintiffs from obtaining any professional assistance if plaintiffs are to have protection from the foreclosure statutes. This provision by necessity requires a high degree of due diligence by defendants in utilizing federal and state programs to prevent foreclosures and retain home ownership. [¶] . . . At no time did defendants satisfy the due diligence provisions of the statute, nor the due diligence of the intent of the statute, either before [Civil Code section] 2923.5 took effect or after it took effect."

The Nguyens contend that these allegations are sufficient to support a cause of action for a violation of section 2923.5 since they allege that defendants completely failed to comply with the statute. Alternatively, if more specific allegations are required, the Nguyens assert that "such an omission from the complaint is a mere technicality and it would be error for the court to deny leave to amend on those grounds." Defendants, on the other hand, maintain that the Nguyens have failed to comply with the basic California pleading requirement that "[a] complaint must contain '[a] statement of facts constituting the cause of actions in ordinary and concise language.' (Code Civ. Proc., § 425.10(a)(1).)"

It has been held that a private right of action may arise from a violation of the contact requirements of section 2923.5. (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 221-224; see also *Skov v. U.S. Bank National Assn.*(2012) 207 Cal.App.4th 690, 699.) Thus, "[a] borrower may state a cause of action under section 2923.5 by alleging the lender did not actually contact the borrower or otherwise make the required efforts to contact the borrower despite a contrary declaration in the recorded notice of default. [Citation.]" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1494.)

Here, the Nguyens merely allege the legal conclusion that "[a]t no time did defendants satisfy the due diligence provisions of the statute, nor the due diligence of the

28

intent of the statute . . . ." These allegations are insufficient to state a cause of action for violation of section 2923.5, for two reasons. First, the allegations include no facts to support the alleged violation. (See *Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 730 (*Dey*) [mere allegation that defendant violated 15 U.S.C. § 1692e(2)(A) insufficient to withstand demurrer].) Second, we do not treat the demurrer as admitting "conclusions of fact or law. [Citation.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*).) We also find that the Nguyens have not met their burden to prove that an amendment would cure the defect (*Schifando*, *supra*, 31 Cal.4th at p. 1081) since they offer no proposed amendment or facts to support the alleged violation of section 2923.5.

For these reasons, we determine that the trial court properly sustained the demurrer to the sixth cause of action for violation of section 2923.5 without leave to amend.

## I. *Violation of Civil Code Section 2924b, Subdivision (b)(1)*

In the seventh cause of action, the Nguyens assert a violation of Civil Code section 2924b, subdivision (b)(1) based on the following allegations: "Defendants Reconstruct and/or MERS have initiated the foreclosure proceedings by causing to be recorded a document entitled 'Notice of Default and Election to Sell Under Deed of Trust'. [¶] . . . Said defendants have failed to comply with the mandatory requirements of [Civil Code section] 2924b(b)(1). [¶] . . . Said defendants have failed to comply with the restrictions imposed by [Civil Code section] 2923.5. [¶] . . . The Notice of Default is an improper impediment of title and plaintiffs are entitled to have it removed from the records by the County Recorder of Santa Clara."

Civil Code section 2924b, subdivision (b)(1) (hereafter, section 2924b) states: "The mortgagee, trustee, or other person authorized to record the notice of default or the notice of sale shall do each of the following: [¶] . . . Within 10 business days following recordation of the notice of default, deposit or cause to be deposited in the United States

29

mail an envelope, sent by registered or certified mail with postage prepaid, containing a copy of the notice with the recording date shown thereon, addressed to each person whose name and address are set forth in a duly recorded request therefor, directed to the address designated in the request and to each trustor or mortgagor at his or her last known address if different than the address specified in the deed of trust or mortgage with power of sale."

According to the Nguyens, the second amended complaint sufficiently alleges a failure to comply with the procedural requirements of section 2924b. Defendants argue that the allegations offer no facts to support the claimed violation of section 2924b, and therefore the demurrer was properly sustained. We agree.

As we have discussed, to withstand demurrer a cause of action for violation of a statute must include factual allegations to support the violation; a legal conclusion that the defendant did not comply with the statute is insufficient. (See *Dey*, *supra*, 170 Cal.App.4th at p. 730; *Zelig*, *supra*, 27 Cal.4th at p. 1126.) Since the Nguyens have not attempted to show how the cause of action could be amended to cure the factual deficiency, we determine that the demurrer to the cause of action for violation of section 2924b, subdivision (b)(1) was properly sustained without leave to amend.

**J.  *Violation of Business and Professions Code Section17200***

In the eighth cause of action for violation of Business and Professions Code section 17200 (hereafter, section 17200), the Nguyens allege that they were consumers within the scope of section 17200 and that the "brokers, agents and lending officers of defendants" made "*material false, unfair, deceptive, untrue, and misleading representations*" that the fair market value of their home was $1.6 million and that refinancing their loan would allow them to "keep the near term monthly payments down, obtain several years of appreciation in the value of the home, and sell or refinance the home at an appreciated value; and [that they] will pay an annual percentage interest rate of 1%." The Nguyens further allege that defendants' misrepresentations and predatory

30

lending constitute unfair business practices that have caused the Nguyens to expend money and also increased the negative equity in their home and the possibility of foreclosure.

On appeal, the Nguyens contend that these allegations are sufficient for a section 17200 cause of action because defendants' misrepresentations are likely to deceive the public and therefore constitute a fraudulent business practice under section 17200. They also assert that whether a practice constitutes a fraudulent business practice under section 17200 is a question of fact that cannot be determined on demurrer.

According to defendants, the Nguyens have failed to state a cause of action for violation of section 17200 because they have not alleged the facts supporting the claim with sufficient particularity in the absence of specific factual allegations regarding the misrepresentations, reliance, and damages.

Under section 17200, there are "three different kinds of business acts or practices that may constitute unfair competition: the unlawful, the unfair, and the fraudulent. [Citations.]" (*Rose v. Bank of America, N.A.* (2013) 57 Cal.4th 390, 394.) "A claim made under section 17200 ' "is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct. [Citation.] Thus, California courts have consistently interpreted the language of section 17200 broadly. " ' [Citations.]" (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1007-1008.)

" 'A claim based upon the fraudulent business practice prong of the [unfair competition law] is "distinct from common law fraud. 'A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for . . . relief" under the [unfair competition law]. [Citations.] This distinction reflects the [unfair competition law's] focus on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general

31

public against unscrupulous business practices." ' [Citation.]" (*Boschma, supra*, 198 Cal.App.4th at pp. 252-253; see also *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 81.)

A plaintiff alleging unfair business practices under section 17200 must state with "reasonable particularity the facts supporting violation." (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619 (*Khoury*).) Moreover, " '[i]t has been consistently held that " 'a plaintiff is required only to set forth the essential facts of his [or her] case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his [or her] cause of action.' " ' " (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550 (*Doe*).) In light of these rules and the unfair competition law's "focus on the defendant's conduct," we find that the Nguyens's allegations are insufficient to withstand demurrer. (*Boschma, supra,* 198 Cal.App.4th at p. 252.)

In the second amended complaint, the Nguyens allege that "brokers, agents and lending officers of defendants" made "*material false, unfair, deceptive, untrue, and misleading representations*." They further allege that "[d]efendant banks in marketing loans erroneously misstate on the face of the loan document that borrowers (plaintiffs) will **only pay a yearly interest rate of 1%,** and other similar such language, and in colluding with loan servicers, realtors, title insurance companies, appraisers and the like, continually inflated real estate home prices to entice plaintiffs and other[s] into 'top loaded' or 'leveraged' home (collectively described as 'predatory lending practice'), and thereafter, when the predatory monthly payments escalate and the value of the real estate substantially depreciates, refuse and continue to refuse to refinance the homes based upon the true value of the homes, have so engaged in business practices that are *unfair, deceptive, misleading, violate public policy,* and are unethical, oppressive, unscrupulous and injurious to consumers . . . ."

32

The Nguyens's allegations are insufficient to state a cause of action under section 17200 because they allege in a conclusory fashion that all defendants have committed the asserted unfair business practices. Therefore, it cannot be determined whether any of the specific misrepresentations or specific predatory lending practices alleged by the Nguyens are attributable to any particular defendant. Such conclusory allegations do not serve to acquaint defendants with the nature, source and extent of the section 17200 cause of action. (See *Doe*, *supra*, 42 Cal.4th at p. 550). For the same reason, they do not satisfy the requirement that a plaintiff alleging unfair business practices under section 17200 state the facts supporting the section 17200 violation with reasonable particularity. (See *Khoury*, *supra*, 14 Cal.App.4th at p. 619).

Since the Nguyens have not argued that any deficiencies in the section 17200 cause of action may be cured by amendment, we determine that the trial court did not err in sustaining the demurrer without leave to amend.

### K. *Violation of the Duty of Good Faith and Fair Dealing*

In the tenth cause of action, the Nguyens allege that defendants violated the duty of good faith and fair dealing implied in their "lending contract" by financing the Nguyens's home purchase on the basis of a speculative $1.6 million appraisal and the uncertain and increased payments under the ARM, even though defendants knew that the "imminent collapse of the real estate market would destroy plaintiffs' financial livelihood."

On appeal, the Nguyens do not assert that the above allegations are sufficient to state a cause of action for violation of the duty of good faith and fair dealing, and therefore we find that they have forfeited that issue. (See *In re Sade C.* (1996) 13 Cal.4th 952, 994.) The Nguyens argue instead that defendants breached the duty by failing to assist them to obtain relief from federal and state programs created to assist borrowers, and we assume that the Nguyens are arguing that the second amended complaint could be amended to include such allegations.

Defendants contend that the Nguyens cannot assert a claim for violation of the duty of good faith and fair dealing against ReconTrust or MERS since they were not parties to the alleged "lending contract." Defendants also assert that the Nguyens's allegations are insufficient because they have not alleged conduct that was prohibited or required by the "lending contract."

The elements of a cause of action for violation of the implied covenant of good faith and fair dealing are well established. "The law implies in every contract a covenant of good faith and fair dealing, meaning that neither party will do anything which will injure the right of the other to receive the contract's benefits. [Citations.]" (*Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 928-929 (*Bushell*).) Thus, "[i]t is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract. [Citations.] [U]nder traditional contract principles, the implied covenant of good faith is read into contracts 'in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.' [Citation.]" (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373.)

Further, "[t]he implied covenant of good faith and fair dealing is a contractual relationship and does not give rise to an independent duty of care. Rather, ' "[t]he implied covenant of good faith and fair dealing is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract." ' [Citation.] Outside of the insured-insurer relationship and others with similar qualities, breach of the implied covenant of good faith and fair dealing does not give rise to tort damages. [Citations.]" (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 206.) Thus, a cause of action for breach of the covenant of good faith and fair dealing was not stated where the plaintiff failed to plead facts describing how the defendant had either deprived the plaintiff of the right to receive

34

benefits under a deed of trust or refused to perform under the terms of the deed of trust. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 525.)

In the present case, it is clear that the Nguyens have not alleged facts sufficient for a cause of action for violation of the implied covenant of good faith and fair dealing in the "lending contract." As defendants correctly point out, the Nguyens have not alleged that defendants injured the Nguyens's right to receive the benefits of the "lending contract." (*Bushell*, *supra*, 220 Cal.App.4th at pp. 928-929) The allegations that defendants breached the duty of good faith and fair dealing by failing to assist the Nguyens to obtain relief from federal and state programs created to assist borrowers are also insufficient because there is no accompanying allegation that the "lending contract" includes terms requiring defendants to provide such assistance. The Nguyens do not argue that the second amended complaint may be amended to cure the deficiencies in this cause of action.

We therefore determine that the trial court properly sustained the demurrer to the cause of action for violation of the duty of good faith and fair dealing without leave to amend.

**L.** *Conclusion*

For the reasons stated above, we conclude that the allegations of the second amended complaint fail to state any cause of action against defendants, and the trial court did not abuse its discretion in sustaining defendants' demurrers without leave to amend. We will therefore affirm the May 30, 2012 judgment of dismissal in defendants' favor. We also conclude that defendant PNC should be dismissed from the appeal since we lack appellate jurisdiction in the absence of a notice of appeal mentioning the May 17, 2012 judgment of dismissal in PNC's favor.

## V.  DISPOSITION

Defendant PNC Bank, N.A. is dismissed from the appeal. The May 30, 2012 judgment of dismissal in favor of Bank of America (including its subsidiary and acquired

entities BAC Home Loans Servicing, L.P. and Countrywide Bank, N.A.), ReconTrust, and MERS entered on May 30, 2012 is affirmed.  Costs on appeal are awarded to respondents.


                              _____

                              BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:


_____

MÁRQUEZ, J.


_____

GROVER, J.